MILLAUDON
    *vs.*
ARNOUS & AL.

An agreement
by the endorser
of a note, to re-
ceive in pay-
ment, pickets
at a fixed price,
on a distant day
after protest
and notice, li-
berates the en-
dorser.

*MILLAUDON* vs. *ARNOUS & AL.*

APPEAL from the court of the fourth district.

MARTIN, J. delivered the opinion of the court. The defendants, sued as endorsers of a promissory note, pleaded the general issue, and that the plaintiff neglected to protest the note, and to give them notice of its not being paid, and did make arrangements and agreements with the maker, for the payment of it, whereby they were discharged. He had judgment and they appealed.

The record shows that the protest was read in evidence, and the notary deposed he gave notice to the defendants by a letter, which he put into the post-office.

Bouton, a clerk of the plaintiff deposed, that the plaintiff, having heard the defendant Pedron was at Vignaud's, in this city, sent the witness there, who was told by Vignaud that Pedron was out, but if the witness came about the note, he could tell him he heard Pedron say he would call and pay the plaintiff. This was in the course of 1823.

A letter from the plaintiff to the defendants, shows that he wrote to them, that with the view of facilitating the payment of the note to the

maker, he had promised to purchase pickets
from him, provided, they were delivered in
March following; that he had waited in vain,
and had declined purchasing pickets from other
persons. He now demanded payment from the
defendants.

Vignaud deposed the plaintiff told him he
had settled with Blake (the maker) for the
note, that Blake was to send pickets in pay-
ment, that witness, calling a second time to
ascertain whether the note was really paid,
was informed Blake had settled it, and was to
send pickets.

It is clear that the maker of the note acqui-
red from the plaintiff the right of paying it in
pickets on a deferred day. Although the plain-
tiff cautiously promised to *purchase* pickets,
the object of this agreement to purchase was
to *facilitate* to the maker the payment of the
note and thus the plaintiff forewent the right of
demanding money in payment of the note, till
the deferred day, on which the pickets were to
be delivered.

The facility thus yielded to the maker was
an obstruction to the right of the payee, the
plaintiff's endorser. For the plaintiff could
not have transferred, after this agreement, the

East'n. District,
*May* 1825.

MILLAUDON
*vs.*
ARNOUS & AL.

absolute right of the note to his assignee; no, not even to the defendants, if they had tendered him the amount of the note, in order to prosecute the maker, for the note must have passed to the assignee or the defendants, *cum onere.* For the plaintiff had, when he made this agreement, the complete ownership of the note, and every bargain made with him, insured to the maker the proposed advantage in the payment of the note, not only against the plaintiff, but also against any person, who by the assignment or delivery of the note, with a blank endorsement, might succeed to his rights.

There is no obligation of *active* diligence, in the holder of a note, to sue the maker or any prior endorser, and he may forbear to sue, as long as he pleases; but *he must not agree to give time,* so as to preclude himself from suing him, and suspend his remedy against him to the prejudice of the endorser. *Chitty*, 371.

The holder of the note, who intends resorting against his endorser, must retain the faculty, on receiving his payment from the latter, to transfer him all his rights, absolutely unimpaired, against the maker.

By doing an act which impairs this faculty the recourse against the endorser is forfeited,

and no circumstance can restore it without the endorser's concurrence.

Here, till the first of March following, by the agreement of which the plaintiff's letter contains the evidence, the right of sueing the maker had been abandoned by the plaintiff, with the hope pickets would be provided according to the agreement; the plaintiff during that time could not call on his endorsers for payment, for if they could be obliged to pay *him,*it would follow they could oblige the maker to pay *them*; which would be inconsistent with the agreement, that he should have the facility of paying in pickets, on the first of March.

The plaintiff's letter implicitly recognises the obligation he had put himself under,to wait with the maker till the first of March. For he makes the neglect of the maker to comply with his promise, to deliver pickets on that day, the ground of his right to call on the defendants.

But the plaintiff, by entering into an obligation to give time to the maker, rendered him less active to pay, than he probably would have been, if he had continued liable to an immediate suit, and the plaintiff's right on the defendants, affected by the indulgence he gran-

East'n. District.
May 1825.

MILLAUDON
vs.
ARNOUS & AL.

ted to the maker, cannot be restored or revived by the neglect of the latter.

The plaintiff has relied on several cases, which we have attentively examined. That from 3 *Campbell* is the case of an *accommodation* note, which is there said to create an exception to the general rule. *Exceptio probat regulam.* That from 16 *Johnson* does not support him, the principle of that case being that *passive* indulgence does not discharge, but *active* does. Yet the plaintiff was *actively* indulgent. The case in 18 *Johnson* settles nothing; it is an *it seems* case, not very strong. The case in *Bosanquet and Puller* establishes that *receiving* security does not discharge. If the holder be not bound to sue, if he may wait, surely there is no injury done, if he take security, if he strengthens his right. The endorser, that may pay him, may have the benefit of this. The case in 10 *East* is the case of a *bond*, which in England, is not a negotiable instrument.

The case in *Gilmer*, a Virginia reporter, goes the whole length of the principle contended for in the plaintiff's case, but we have not been able to see the whole of it. The reports of that gentleman are not known to be in the

state, and we have only what we suppose to be *the marginal note of it*, in a digested index.

East'n. District.
*May* 1825.

MILLAUDON
*vs.*
ARNOUS & AL.

The case is a *solitary* and an *anomalous* one. We are unable to judge of the weight it is entitled to; particular regulations in Virginia very likely support it, but we cannot take it as affording us a legitimate rule of conduct.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that there be judgment for the defendants, with costs in both courts.

*Dumoulin* for the plaintiff, *White* for the defendants.